433 P.2d 811

Orme LEWIS and J. Leslie Hansen, Appellants,

v.

BOARD OF ADJUSTMENTS OF the CITY OF PHOENIX, Arizona, Appellee.

1 CA–CIV 451.

Court of Appeals of Arizona.

Nov. 20, 1967.

Rehearing Denied Dec. 11, 1967.

Review Denied Jan. 16, 1968.

Lewis, Roca, Beauchamp & Linton, by James Moeller, Phoenix, for appellants.

Robert J. Backstein, City Atty., City of Phoenix, by David M. Lurie and Donald L. Lindholm, Asst. City Attys., for appellee.

STEVENS, Judge.

This Court is asked to review the judgment of the trial court which affirmed the action of the Board of Adjustments of the City of Phoenix in a zoning matter. The Board of Adjustments reversed the decision of the Zoning Inspections Supervisor. The Zoning Inspections Supervisor had held that the use of the property in question was not a legal non-conforming use.

The property in question, together with surrounding property, was annexed by the City of Phoenix on 1 March 1960. At the time of annexation, the Zoning Ordinance

of Maricopa County was in effect. The Maricopa County Zoning for the annexed property was "Rural".

The general area under consideration is land adjacent to 32nd Street and south of Baseline Road. Navarro owned 665 acres, the northerly boundary of which was Baseline, the easterly boundary of which was 32nd Street and the southerly boundary of which was the Highline Canal. This canal runs generally East Northeast to West Southwest. Navarro grew citrus on his land and also maintained his home thereon.

At the time of annexation, Mrs. Roberson owned a triangular parcel of approximately three acres bounded on the north by the canal and on the east by 32nd Street. The appellant Lewis owned desert acreage south of the canal and west of 32nd Street. The Lewis land adjoined the Roberson land. The appellant Hansen owned acreage the northerly boundary of which was the Highline Canal and the westerly boundary of which was 32nd Street. Hansen maintained his home on this land. The Hansen driveway entered 32nd Street approximately opposite the Roberson property. It is the Roberson property, together with an additional one acre which is referred to in this opinion as the property in question.

Prior to annexation, Navarro maintained and stored farm equipment on his 665 acres. This equipment was used for his own tillage and for some custom tillage. After annexation the City of Phoenix rezoned the area south of the canal in a residential classification designated as R1-6. Parties to this appeal assume that the City Zoning became effective on 13 June 1961 although a City Zoning employee testified in the hearing before the Board of Adjustments that the zoning became effective 1 January 1962.

Phoenix Ordinance No. G-449 was the general Zoning Ordinance which was amended by adding the zoning in question. Section 106 of this ordinance related to non-conforming uses of annexed property. This section recognized that there could be uses at the time of annexation which were not in conformity with City Zoning and a continuation of that use was authorized by the following language contained in Section 106:

"* * * such use or such location or erection shall be deemed to be a non-conforming use, and may continue in the manner and to the extent that it existed or was being used at the time of such enactment or amendment * * *."

Subsection C of Section 106 authorized a continuance of County zoning in newly annexed areas until the City had rezoned after annexation.

Navarro purchased the property in question on 20 October 1960 after annexation and before City zoning.

In 1965, a protest with reference to Navarro's use of the property in question was lodged with the Zoning Inspectors Supervisor of the City of Phoenix who, after investigation, rendered a decision that the use was not a legal non-conforming use. Navarro appealed to the Board of Adjustments. A very limited issue was presented to the Board of Adjustments. We can best state that issue by quoting from the appeal document.

"Appeal. from decision of Bldg. Inspection that a non-conforming use (storage of farm equipment) has not been established on this parcel."

At the Board of Adjustments hearing on 12 January 1966, evidence both pro and con was introduced as to the date of the inception of Navarro's use of the property in question and the nature and extent of that use. The only evidence before us as to limits of use permitted under Maricopa County Rural Zoning classification is the testimony of a Zoning Department employee.

"Chairman: Rural zoning—would that permit the storage of farm equipment?

"Mr. Pineda: For personal use, yes.

"Chairman: For personal use. Any other questions by Board members?"

The Board of Adjustments reversed the decision of the Zoning Inspectors Super-

visor and thereby found that a non-conforming use had been established.

■ Pursuant to A.R.S. Section 9–465, subsec. E, which reads in part as follows:

"A person aggrieved by a decision of the board, * * * may, * * * within thirty days after the filing of the decision in the office of the board, petition a writ of certiorari for review of the board's decision * * * the court * * on final hearing may reverse or affirm, wholly or partly, or may modify the decision reviewed.",

Hansen and Lewis secured a writ of certiorari for a review by the Superior Court. It should be noted that the authority of the Superior Court is much broader under Section 9–465, subsec. E than is the grant of authority under general Arizona statutes relating to writs of certiorari which are found in A.R.S. Section 12–2001 and subsequent sections.

■ We hold that there was sufficient evidence to warrant a finding that Navarro had established a legal non-conforming use on the property in question prior to the advent of City Zoning. In our opinion the matter which was presented to the Board of Adjustments would not require a decision as to whether Navarro's use exceeded those uses permitted by a non-conforming use. We expressly reserve the question as to whether Navarro's use encompassed uses which were not permissible under a non-conforming use.

Affirmed.

CAMERON, C. J., and DONOFRIO, J., concur.

ing and later acquired jurisdiction of same juvenile in delinquency proceeding, ex parte custodial orders subsequently rendered in divorce action and hearings conducted, and proposed to be conducted in divorce action to determine custodial matters affecting child were, and would be, so long as juvenile proceedings remained open, beyond jurisdiction of the divorce court and prohibition was proper remedy. Ariz. Const. art. 6, § 15; A.R.S. § 8–202.